FRANK M. ANASTASIO, TREASURER v. GULF OIL CORPORATION

SUPERIOR COURT    HARTFORD COUNTY    FILE No. 65353

Memorandum filed January 3, 1947.

*William L. Hadden,* Attorney General, and *Frank J. DiSesa,* Assistant Attorney General, both of Hartford, for the Plaintiff.

*Shipman & Goodwin,* of Hartford, for the Defendant.

INGLIS, J. It is apparent that the state referee in making his findings of fact in this case operated under at least two misconceptions of the law.

The first of these misconceptions was that General Statutes, Cum. Sup. 1935, §655c was in effect. That section provided that a gasoline distributor in paying the gasoline tax might deduct 1 per cent thereof to cover the expense of collection of the tax and shrinkage. As pointed out by the Supreme Court of Errors, that statute had been repealed. The result of the referee's understanding that the 1 per cent deduction covered all loss by shrinkage was that in finding the tax due he did not take that factor into consideration.

His second misconception was as to the proper method of approach to his problem of finding the amount of tax now due. The statute, Cum. Sup. 1935, § 654c, imposes a tax upon the gallonage of gasoline "sold or used in this state" by the distributor, less certain deductions. It requires each distributor to

report to the state each month the number of gallons so sold or used. It also requires each distributor to furnish such further information as the commissioner may prescribe. It has been the practice of the commissioner to require information as to the distributor's inventory on hand at the beginning of the month, the number of gallons received during the month and the inventory at the end of the month. This tabulation generally showed a substantial gallonage which was unaccounted for by sales and use and by deductions allowed by law. The referee proceeded to compute the tax remaining unpaid on this difference, less a loss by way of evaporation, the percentage of which evaporation he found to be 528/1000 of one per cent. He does say in paragraph 29 of the report: "More than 528/1000 of 1 per cent of the gasoline that passed through the defendant's facilities may have evaporated but the amount, if any, of such excess remains unknown and unproven." He makes no finding as to how much, if any, of the gasoline brought into this state by the defendant was loss by leakage or spillage, etc., probably because there was no definite proof as to what that amount was.

The net result of this method of figuring is that the tax is computed on the amount of gasoline brought into the state by the distributor less the deductions allowed by the statute and less such losses by way of evaporation as the distributor can definitely prove. This result is not necessarily the one which the law requires. After all, the law requires that the tax be computed upon the gallonage "sold or used." The only purpose to be served by the information as to the amount of gasoline brought into the state is to serve as a check on the report made by the distributor of how much it has sold or used.

The burden under the statute is upon the distributor to prove that its report showing the gallonage sold or used is correct and accurate. That, however, might well be proved to the satisfaction of the trier by the sworn statement of the distributor plus his copies of the sales slips. Whether that is adequate proof of the gallonage sold or used is for the trier to determine. If, on the other hand, a discrepancy appears between the report of the distributor as to the gallonage sold or used and other figures which are available, showing that the distributor brought some gasoline into the state for which he cannot account, that might lead the trier to the conclusion that the distributor's statement as to his sales and use was false or mistaken, and that therefore he had not met the burden of proof. To use the information showing the discrepancy for that purpose would be proper.

In order to use the discrepancy for that purpose, however, it would have to appear that there was no reasonable or credible way to account for it except upon the theory that the report was erroneous. It is, of course, true that it is for the trier to say whether or not the discrepancy remains unaccounted for to the extent that it shakes his faith in the credibility of the evidence supporting the report. But it is not proper, as the referee obviously did in this case, to ignore the reports filed by the defendant and its supporting evidence of those reports and start with the assumption that it owed an additional tax on all of the gallonage brought by it into the state the disposition of which it could not definitely prove.

Probably as a result of the referee's method of approach, there nowhere appears in the report any finding that any of the gallonage referred to in the report as "Gallons remain as tax-able" had actually been sold or used in this state by the distributor. Lacking such a finding, it is impossible to sustain the conclusion that a tax on that gallonage remains unpaid.

Having concluded that the referee acted on these two misconceptions, the next question is whether it is possible to correct his report so that judgment may enter upon it. If this could be accomplished it would be highly desirable.

So far as the first misconception is concerned, it might be possible to arrive at an estimate of the total loss of gasoline sustained by the defendant which would have been found by the referee if he had not supposed that shrinkage was to be covered by the 1 per cent deduction. This could be done by combining his finding that loss by shrinkage amounted to 3/10 of 1 per cent and his finding that loss by evaporation amounted to 528/1000 of 1 per cent. However, these findings are of subordinate facts, and the rule (Practice Book § 172) provides that the court will not supply by its own conclusion from subordinate facts the ultimate facts which the referee should have found. The wisdom of this provision is exemplified in this case by the fact that when the defendant in Part IIIA and B of its amended remonstrance undertakes to arrive at a conclusion by just this method it arrives at two different results.

As regards the second misconception, that is the misconception that the tax was to be computed not on gasoline sold and used but rather on gasoline brought into this state which either was sold or used or was unaccounted for, and the misconception as to the proper method to follow to determine the amount of

gasoline sold or used, there can be no cure. This misconception so goes to the root of the matter that it would be impossible to correct the report in such a way that it would, with certainty, be overcome.

Under all of the circumstances, although neither of the parties in their amended remonstrances prays for anything more than a large number of corrections of the report, it is obvious that the only thing to be done is to reject the report. The court hereby sustains the defendant's amended remonstrance and rejects the report of the state referee. Practice Book § 175. Inasmuch as the referee who made the report is now deceased, it will be necessary to refer the case to another referee. Before the order for such reference is enterd, it is suggested that counsel attempt to agree upon one of the state referees as the one to whom they would prefer to have the reference made and make sure that he is willing and available to take the reference. If counsel will notify the undersigned as to what their agreement is, or that they cannot agree, if that should be the case, a formal order of reference will thereafter be entered.